UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SOUTHERN NEVADA TBA SUPPLY COMPANY dba TED WIENS TIRE AND AUTO CENTERS,<br><br>                    Plaintiff,<br>vs.<br><br>UNIVERSAL UNDERWRITERS INSURANCE COMPANY,<br><br>                    Defendant. | Case No.: 2:15-cv-00046-GMN-NJK<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss (ECF No. 8) filed by Defendant Universal Underwriters Insurance Company ("Universal"). Plaintiff Southern Nevada TBA Supply Company dba Ted Wiens Tire and Auto Center ("Wiens") filed a Response in Opposition (ECF No. 16), and Universal filed a Reply (ECF No. 23).

I.      **BACKGROUND**

Wiens initiated this action by filing its Complaint (ECF No. 3-1) in Nevada state court on October 23, 2014. In the Complaint, Wiens alleges Universal has issued several insurance policies numbered UN5-265756, UN5-265756A, and UN5-265756B to Wiens covering a period from May 1, 2005 to May 1, 2008 (the "Policies"). (Compl. ¶ 5, ECF No. 3-1). The Policies allegedly provide coverage to Wiens for injuries, costs, and expenses "arising out of" or "caused by" "(1) [Wiens]'s garage operations and (2) a request, demand, order, claim or suit by or on behalf of a governmental authority demanding that [Wiens] test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effects of pollutants occurring away from premises owned, operated or rented by [Wiens]." (*Id.* ¶¶ 6–8) (emphasis omitted). The Policies also allegedly contain a "pollution exclusion" which

provides: "Coverage does not apply to injury or pollution damages arising out of actual, alleged, or threatened discharge, dispersal, release, migration, seepage, or escape of pollutants at or from premises owned, rented, or occupied by [Wiens]." (*Id.* ¶ 9) (emphasis omitted). However, Wiens asserts that this exclusion is not applicable to any pollution damages that have "migrated, discharged, dispersed, released, or seeped, in whole or in part, from premises owned rented or occupied by persons or entities other than Wiens" or have only partially "migrated, discharged, dispersed, released, or seeped from premises owned, rented or occupied by Wiens." (*Id.* ¶ 10) (emphasis omitted).

On December 10, 2007, a complaint was filed in Nevada state court alleging that certain plaintiffs suffered damages to their residential properties from the "Maryland Square PCE Plume" at the former site of the Al Phillips the Cleaner in the Maryland Square shopping center in Las Vegas, Nevada. (*Id.* ¶ 22). Likewise, on November 19, 2008, a complaint was filed in an action before this Court (the "Underlying Federal Action") containing almost identical allegations to the first state court suit. (*Id.* ¶ 24). While, Wiens was not originally named in either of these first two actions, on February 3, 2010, a third-party complaint was filed in the Underlying Federal Action naming Wiens as a defendant and alleging that "in 1993, a reported spill at the Ted Wiens Service Center was investigated, and that Wiens "may have contributed to the PCE plume alleged by the Plaintiffs." (*Id.* ¶¶ 25–27); *see also* (Third Party Compl. ¶¶ 40–54, Ex. A. to Reply, ECF No. 23). Subsequently, on September 1, 2010, a third party complaint was filed in a second Nevada state court action (the "Underlying State Action") naming Wiens as a Defendant and alleging that "in 1993, a reported spill at the Ted Wiens Service Center was investigated." (Compl. ¶¶ 28–30, ECF No. 3-1); *see also* (SAC in Underlying State Action ¶¶ 71–84, Ex. B. to Reply, ECF No. 23). The complaints in both the Underlying Federal Action and the Underlying State Action allege spills by both Wiens and other defendants that may have contributed to PCE Plume. (Compl. ¶¶ 27, 31, ECF No. 3-1).

Wiens was ultimately dismissed from both actions. (*Id.* ¶¶ 33–34).

Wiens contends that it timely tendered to Universal a requests for a defense in both of the suits naming Wiens, but Universal determined that it was not obligated to provide coverage because "the alleged injury was caused by the release of [p]ollutants located on [Wiens'] property," and therefore the pollution exclusion precluded coverage. (*Id.* ¶¶ 35–38). Accordingly, Universal refused to provide coverage. (*Id.* ¶ 39).

Following Universal's refusal to cover Wiens' costs in defending the two underlying actions, Wiens filed the present action, asserting claims against Universal for breach of contract, contractual breach of the implied covenant of good faith and fair dealing, tortious breach of the implied covenant of good faith and fair dealing, violation of Nevada Revised Statutes § 686A.310, and declaratory relief. (*Id.* ¶¶ 40–71).  Universal subsequently removed the action to this Court and filed the pending Motion to Dismiss for failure to state a claim upon which relief can be granted.

## II.     LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

*State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**III.     DISCUSSION**

The resolution of the Motion to Dismiss turns on the interpretation of certain portions of

the Policies and on the claims alleged in the complaints of the underlying actions.  In its motion, Universal acknowledges that the Policies generally cover the costs incurred by Wiens in defending a suit for pollution damages caused by Wiens' release of pollutants. (MTD 2:9–6:3, 18:12–20:11, ECF No. 8).  However, it argues that the Policies do not create a duty to defend Wiens in lawsuits relating to pollutants released by third parties. (*Id.*).  Moreover, under the pollution exclusion, it does not have a duty to defend Wiens in suits arising from damages caused by Wiens' release of pollutants at premises owned or occupied by Wiens. (*Id.*). Therefore, the only pollution damages suits covered by the Policies are those arising from damages caused by Wiens' release of pollutants away from premises it owns or occupied, such as a spill of pollutants being transported to or from such premises. (*Id.* 10:8–26).  Accordingly, because the Underlying State Action and Underlying Federal Action allege claims arising from damages caused by pollutant spills either (1) at a premise occupied by Wiens, namely the Ted Wiens Service Center, or (2) by parties other than Wiens, Universal had no duty to defend in those lawsuits. (*Id.* 18:12–20:11).  As a result, because Universal had no duty to defend the underlying actions, all of Wiens' claims must fail. (*Id.* 20:12–25:1).

In its Response, Wiens argues for a different interpretation of the Policies.  Specifically, Wiens contends that the Policies create a duty to defend all suits against Wiens based on claims caused by pollution emanating from premises other than those owned or occupied by Wiens. (Resp. 4:21–8:2, ECF No. 16).  In other words, coverage is not limited to suits alleging pollution attributable to Wiens' conduct, but also includes any suits involving pollution caused by others in which Wiens is defendant. (*Id.*).  Moreover, the pollution exclusion only precludes claims based on spills occurring at premises owned or operated by Wiens. (*Id.* 4:21–8:2, 23:11–25:25).  Therefore, because the claims in underlying actions relate to a PCE Plume allegedly caused by both pollutants released away from any premises owned or operated by Wiens as well as pollutants allegedly released from the Ted Wiens Service Center, the underlying actions

are "mixed actions" containing both covered and non-covered claims; therefore, Universal had a duty to defend the suits.[1] (*Id.* 14:12–20:22).

Both parties seem to agree that there are three provisions of the Policies that are relevant to Wiens' claims—Coverage Part 500 (Garage Insurance), Coverage Part 950 (General Liability Insurance), and Coverage Part 980 (Umbrella Insurance). *See* (Compl. ¶¶ 16–21, ECF No. 3-1); (MTD 13:1–17:2, ECF No. 8). However, despite the fact that the determination of this motion—and the lawsuit itself—hinges on the language of these three provisions in the Policies and both parties purportedly quote this language in their filings, neither party has actually provided a copy of the Policies to the Court.[2] Moreover, the language quoted by each party for the same provisions are not identical. *Compare* (Compl. ¶ 16, ECF No. 3-1) (quoting Coverage Part 500 in part as: "We will pay all sums the INSURED legally must pay as DAMAGES … because of INJURY … caused by an OCCURRENCE arising out of GARAGE OPERATIONS (Defined in relevant part to include ownership, maintenance or use of that portion of any premises where the named insured conducts business [sic] its auto business [sic] **'and all OTHER operations necessary or incidental thereto.'**") *with* (MTD 13:17–25, ECF No. 8) (quoting the same coverage part as: "We will pay all sums the INSURED legally must pay as DAMAGES … because of INJURY … caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD. We will pay all sums the INSURED legally

---

[1] Wiens also spends a substantial portion of its Response arguing various reasons why Universal's "implausibility argument" should be rejected. *See* (Resp. 8:3–14:11, ECF No. 16). However, all of Wiens' arguments are premised on a misunderstanding of Universal's position. Wiens mistakenly believes that Universal is arguing that it has no duty to defend because the claims in the underlying actions are implausible, when Universal is actually arguing that Wiens' Complaint does not state a plausible claim and therefore does not meet the *Iqbal* and *Twombly* pleading standard. (MTD 2:9–6:3, ECF No. 8). Therefore, Wiens' arguments against Universal's claim of implausibility are inapplicable to the present motion.

[2] Attached as Exhibits C, D, and E to Universal's Motion to Dismiss are three untitled documents of between 83 and 93 pages in length (ECF Nos. 8-3–8-5) that appear to contain information regarding the Policies, including numerous "endorsements" purporting to amend provisions of the Policies. However, Universal does not cite to these exhibits when it purportedly quotes the Policies nor can the Court find the quoted language anywhere in the exhibits.

must pay because of COVERED POLLUTION DAMGES …."). Accordingly, because the Court does not possess a copy of the Policies which all parties agree is genuine and can therefore be considered in ruling on the motion, *see Branch*, 14 F.3d at 454, for the purposes of the present motion, the Court treats the language of the Policies quoted in the Complaint as the correct language of the Policies. *See NL Indus., Inc.*, 792 F.2d at 898 (When determining whether a complaint is sufficient to state a claim, the Court "must accept all material allegations in the complaint as true and construe them in the light most favorable to [the plaintiff].").

According to the Complaint, the three relevant provisions are as follows. Coverage Part 500 provides:

> **INSURING AGREEMENT –** We will pay all sums the INSURED legally must pay as DAMAGES … because of INJURY … caused by an OCCURRENCE arising out of GARAGE OPERATIONS (Defined in relevant part to include ownership, maintenance or use of that portion of any premises where the named insured conducts business[)] ….
>
> We will pay all sums the INSURED legally must pay because of COVERED POLLUTION DAMAGES … to include costs or expenses arising out of a … claim or suit by or on behalf of, a governmental authority demanding that the insured test for, monitor or clean up, remove, treat, detoxify or neutralize, or in any way respond to, [sic] assess the effects of pollutants.
>
> We have the right and duty to defend any SUIT asking for these Damages….
>
> "COVERED POLLUTION DAMAGES" means those POLLUTION DAMAGES not otherwise excluded which occur away from the premises owner [sic] or operated by YOU, arising from:
> (1) YOUR PRODUCT or WORK;
> (2) POLLUTANTS while being transported on covered AUTO by YOU;
> (3) Fuel or … other similar POLLUTANTS needed for or result [sic] from the … mechanical functioning of the covered AUTO or its parts …;
> (4) POLLUTANTS, not in or upon a covered AUTO, that are upset … as a result of the maintenance or use of a covered AUTO and are the direct result of such upset….

> This insurance does not apply to: (g) INJURY or POLLUTION DAMAGES arising out of the actual, alleged, or threatened … escape of POLLUTANTS: (2) [sic] at or from premises owned, rented or occupied by an INSURED.

(Compl. ¶¶ 16–17, ECF No. 3-1).  Coverage Part 950 provides:

> **INSURING AGREEMENT –** WE will pay all sums the INSURED legally must pay as DAMAGES … because of INJURY … caused by an OCCURRENCE arising out of the hazard shown in the declarations.
>
> We will pay all sums the INSURED legally must pay because of COVERED POLLUTION DAMAGES … caused by an occurrence arising out of PRODUCTS-COMPLETED OPERATIONS HAZARD when such hazard is shown in the declarations and out of the operation of covered MOBILE EQUIPMENT or AUTOS.

(*Id.* ¶ 18).  Coverage Part 980 Provides:

> **INSURING AGREEMENT –** WE will pay for LOSS, subject to the terms and conditions of this Coverage Part, in excess of:
>     (a) Coverage provided in any UNDERLYING INSURANCE[;]
>     (b) Coverage provided to an INSURED in any other insurance;
>     (c) In the absence of (a) or (b) the retention shown in the declarations.
>
> WE have the right and duty to defend any SUIT for LOSS not covered by other insurance, but WE have no right or duty to defend SUITS for LOSS not covered by this Coverage Part….
>
> We will pay also pay [sic] all sums the INSURED legally must pay because of COVERED POLLUTION DAMAGES … caused by an occurrence arising out of PRODUCTS-COMPLETED OPERATIONS HAZARD when such hazard is shown in the declarations and out of the operation of covered MOBILE EQUIPMENT or AUTOS.
>
> LOSS means all sums the insured legally must pay as DAMAGES because of INJURY to which this insurance applies.  LOSS also means all sums the insured must pay as COVERED POLLUTION DAMAGES to which this insurance applies caused by an OCCURRENCE.

(*Id.* ¶ 18).

Under Nevada law, "an insurer bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." *United Nat'l Ins. Co. v.*

*Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004). "If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured." *Id.* Additionally, "[w]hile clauses providing coverage are interpreted broadly so as to afford the greatest possible coverage to the insured, clauses excluding coverage are interpreted narrowly against the insurer." *Nat'l Union Fire Ins. Co. of State of Pa. v. Reno's Executive Air, Inc.*, 682 P.2d 1380, 1383 (Nev. 1984). "However, 'the duty to defend is not absolute.'" *United Nat'l Ins. Co.*, 99 P.3d at 1158 (citing *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir. 1988)). "A potential for coverage only exists when there is arguable or possible coverage," and "[d]etermining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy." *Id.*

Here, the allegations in the complaints from the underlying actions involve claims that a spill potentially caused by Wiens occurred at the Ted Wiens Service Center and that this spill along with spills caused by other parties at other locations all may have contributed to the creation of a PCE plume which damaged the plaintiffs. *See* (Compl. ¶¶ 22–32, ECF No. 3-1); *see also* (SAC in Underlying State Action ¶¶ 26–126, Ex. B. to Reply, ECF No. 23); (Third Party Compl. ¶¶ 25–75, Ex. A. to Reply, ECF No. 23). Therefore, in order for Universal to have a duty to defendant, it must be possible that the Policies provide coverage in suits involving claims arising from (1) allegations that Wiens spilled pollutants at one of its owned or occupied premises, or (2) allegations that a third party spilled pollutants at a location away from Wiens' owned or occupied premises. The language of the Policies alleged in the Complaint, however, do not provide coverage for suits based on either of these types claims.

First, under the language of the Policies quoted in the Complaint, "INJURY or POLLUTION DAMAGES arising out of the actual, alleged, or threatened … escape of POLLUTANTS … at or from premises owned, rented or occupied by [Wiens]" are explicitly excluded from coverage. (Compl. ¶ 17, ECF No. 3-1). Therefore, Universal did not have a duty

to defend Wiens based on the claims in the underlying actions alleging that Wiens spilled pollutants at the Ted Wiens Service Center.

Second, the cited provisions of the Policies only require Universal to defend Wiens in suits alleging injury caused by "garage operations" or "covered pollution damages." Under the definition for "covered pollution damages," however, the only types of pollution damages covered appear to be those damages caused by Wiens or by one of Wiens' autos covered under the Policies. *See* (*Id.* ¶ 16) ("COVERED POLLUTION DAMAGES" means those POLLUTION DAMAGES … arising from: (1) *YOUR* PRODUCT or WORK; (2) POLLUTANTS while being transported on covered AUTO by *YOU*; (3) … POLLUTANTS needed for … the … mechanical functioning of the *covered AUTO* …; (4) POLLUTANTS, not in or upon *a covered AUTO*, that are upset … as a result of the maintenance or use of a covered AUTO ….) (emphasis added). Accordingly, injuries from pollutants spilled by third parties at locations away from Wiens' owned or occupied premises do not qualify as "covered pollution damages." Furthermore, the Complaint partially defines "garage operations" "in relevant part to include ownership, maintenance or use of that portion *of any premises where the named insured conducts business*…." (*Id.* ¶ 16) (emphasis added). Additionally, at an earlier point in the Complaint, Wiens states that Coverage Part 500 covers "*the named insured's* garage operations." (*Id.* ¶ 6) (emphasis added). Therefore, coverage for "garage operations" only applies to damages arising from an occurrence at Wiens' garage and does not apply to a third party's spilling of pollutants at locations away from Wiens' owned or occupied premises. Accordingly, pursuant to the language of the Policies as provided in the Complaint, Universal had no duty to defend Wiens in either of the underlying actions.

Because the language of the Policies quoted in the Complaint fail to create a duty for Universal to defend Wiens in the underlying actions, all of the claims in the Complaint must fail. Therefore, the Court finds that it must grant the Motion to Dismiss. Furthermore, because

the deficiencies in the Complaint arise from a legal finding that Wiens' claims must fail rather than merely an insufficient pleading, amendment of the Complaint appears to be futile. Accordingly, Wiens' Complaint is dismissed with prejudice.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Universal's Motion to Dismiss (ECF No. 8) is **GRANTED**.  Wiens' Complaint (ECF No. 1-3) is **DISMISSED with prejudice**.

The clerk shall enter judgment accordingly and close the case.

**DATED** this 13th day of August, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge